## STATE v WEGER et

Ohio Appeals, 8th Dist, Cuyahoga Co

No 15969. Decided May 31, 1937

Frank T. Cullitan, Prosecutor, Cleveland, and Neil W. McGill Asst. Prosecutor, Cleveland, for plaintiff-appellee.

David Klein, Cleveland, and Harvey E. Elliott, Cleveland, for defendant-appellant.

MONTGOMERY, PJ, and SHERICK, J, (5th Dist), and HORNBECK, J, (2nd Dist) sitting by designation

### OPINION

By SHERICK, J.

The appellant was indicted, tried and convicted upon four counts charging him with violation of §8624-25 GC, popularly known as a portion of the Blue Sky Law. Counts one and five alleged the sale of certain securities to-wit, two promissory notes, one dated July 1st, 1935, payable to Wade H. Beckwith, the other dated November 1st, 1935, payable to Leo Fischer, without being licensed to do so by the Division of Securities.

The second and sixth counts charged Weger with a sale of the aforesaid notes to the respective payees without having had them registered by description or by qualification. The judgment entered upon the verdict was for an indeterminate period on each count separately and the sentences were to run consecutively.

A condensed statement of the proven facts are as follows: Weger promoted an enterprise to perfect and produce a super-aeroplane. He and a few associates formed a corporation and without compliance with the Securities Act sold stock to some 3000 investors. The Division of Securities having caused a cessation of this practice, the defendant conceived a plan of continued operation in about 1926. He testifies: "I asked my people to loan me money to finish my work" He further stated, "I had quite an organization at that time, some possible 3000 people, and I said, We can't sell any more securities and the only solution that I can see for this is that I do it on a personal basis. In other words, I borrow the money. Now, you loan me your money, you and your friends." Without having obtained a license or attempted to procure registration, Weger conferred authority upon an associate, one Ehlers, in the company's office, to issue, as Weger testifies, "to issue those notes to anybody that came in and put their money down for them." Some $300,000.00 was received in this manner. The notes were issued in series and were styled such as "Century Group" and later "Victory Series 1, 2, 3 and thereon." These notes were made up in pads and were signed in blank by Weger. As time and the series progressed, these notes bore certain figures, an explanation of which is that the investor was not only to get his money back with interest, but was to have a certain number of shares in the company when the enterprise reached completion or production or profit paying in some sort of proportionate ratio to the amount of his investment as compared to the total sum invested. As the series progressed, these figures increased in size, that is later subscribers or investors were to acquire a greater proportionate amount of stock when

elysium arrived. Beckwith and Fischer notes were of the popular "Victory 5" series, which entitled them to participate in the future stock issue in a proportion equal to five times the face of their respective notes.

Appellants brief recites certain negative facts. We are unable to perceive wherein these facts advantage the defendants' cause; rather they seem to prejudice the appellant's theory of his transaction in that these notes were not offered to the public generally but only to his stockholders. It is said that there is no evidence that Weger knew or ever talked with Beckwith or Fischer, or that they heard Weger's statement in the company meeting or were apprised of it elsewhere, or that these payees were ever solicited for loans but that their investments were voluntarily made.

The grounds of error complained of are numerous. They will be disposed of in as much as the same is possible in the order assigned. Before proceeding, however, therewith, the pertinent language of §§8624-25, GC, will be recited. It is written that:

"Whoever sells securities or cause the same to be sold or offers the same for sale or causes them to be offered for sale except (in certain cases) without being licensed by the division * * * shall be deemed guilty of a violation of this act, and upon conviction thereof shall be imprisoned * * *."

Weger admits that he never procured a license; and that prior to the date of issue of the Fischer note he had made no application to register any securities by description or by qualification, as prescribed by the aforesaid section, under which counts two and six were drawn as against Weger and Ehlers jointly.

The appellant maintains that these two notes are but plain and simple unsecured promissory notes and that he did not sell the same. The second and fifth counts charge that Weger sold or caused the same to be sold. By his own testimony he states he authorized Ehlers "to issue these notes to anybody that came in and put their money down for them." By his meeting statement he invited his stockholders and their friends to loan him money. This, as far as the record discloses, so says the appellant, the payee investors did not know. Weger never solicited them for a loan. He had never met them. He was willing to do business with his stockholders' friends or "anybody that came in." To say that these transactions were purely loans is perfectly absurd. He was willing to prefer strangers and friends over stockholders. He placed a premium on late investing in his enterprise. True, he promised to repay the amounts invested, but he also promised participation in the enterprises' future profits. He promised them pro ratio shares of stock according to the amounts of their investments. The notes bore descriptive numbers evidencing their right to a portion of the enterprise's future assets. Surely that was intended by Weger as evidence of an assertable right against the highly problematical future earnings which a court would recognize and enforce.

Turning to §8624-2 GC of the Securities Act, we find it defined, that:

"The term 'security' shall mean any certificate or instrument which represents title to or interest in, or is secured by any lien or charge upon the capital, assets, profits, property or credit of any person * * * and shall include * * * interim receipts * * * promissory notes * * * receipts evidencing * * * reorganization certificates * * * any investment contract, any instrument evidencing a promise or an agreement to pay money."

Judge Matthias, speaking for the court in **Graby v State, 109 Oh St 543 (550)** has this to say:

"Such legislation would be worse than vain and useless, if, while regulating the sale of corporate stock it had permitted, without regulation or restriction, the sale of certificates of 'membership receipts' or instruments by whatever name of syndicate or associations, upon the representation that some time in the future the purchasers thereof would be entitled to and would receive certificates of stock in a company to be subsequently organized and incorporated. It is sufficient to say that no such loophole was left in the Blue Sky Law of this state."

This reasoning should and does dispose of this particular claim of the defendant.

It is urged that the sentence of the trial court contravenes the Federal Constitution in that it is cruel and unusual. It is said that the defendant could not be found guilty on all four counts. We perceive no difficulty in answering this query to the

contrary. Each count charged a separate and distinct offense. Citation of authority is uncalled for.

It is next maintained that if these notes are securities that they are exempt from the operation of the Ohio Securities Act by virtue of paragraph six of §8624-3 **GC** which reads:

"Commercial paper and promissory notes where such commercial paper or notes are not offered directly or indirectly for sale to the public."

Keeping in mind the testimony of Weger hereinbefore quoted, and what actually transpired as previously discussed we feel that this claim deserves no further comment.

It is next advanced that if the notes are securities then that more than three years have elapsed between his offer to borrow money in stockholders' meeting and the return of the indictment and hence §6624-27 GC erects a bar against his prosecution. The falacy in this claim is found in the fact that the two notes were issued and sold not in 1926 but in 1935.

It is next insisted that the trial court was moved by passion and prejudice in imposition of sentence. That the court and jury were influenced by editorial comment. The record being silent concerning such matters nothing further need be said.

The trial court is claimed to have erred in the admission of certain testimony; that is, one Blanche Crile, a court reporter, was permitted to testify. She read into the record certain testimony given by Weger in a departmental investigation. It is said that this was not a deposition. Surely it was not, a cursory examination of this evidence quickly convinces us that the admitted testimony was voluntarily given and was admissible as a declaration against interest.

To the claim of error in the court's refusal to give certain requests before argument, the answer is that the provisions of §13442-8 **GC** is not mandatory but discretionary. See **Grossweiler v State, 113 Oh** St 46. **Wertenberger v State, 92 Oh St 353.**

As a final ground of error, appellant's counsel still resorting to the use of the blunderbus, say that the court erred in eight or ten respects in the general charge. Exerpts are picked out and complained of, but when it is examined as a whole we find it fair and harmonious and not prejudicial to the rights of the defendant.

If we have inadvertently overlooked any further claimed error in the dictation of this opinion let it be understood that we have fully examined the same and find no error therein.

The judgment is affirmed. Exceptions.

MONTGOMERY, PJ, and HORNBECK, **J,** concur.